112 N.J. Super. 412 (1970)
271 A.2d 597
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH LEE GRAY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1970.
Decided December 3, 1970.
*413 Before Judges CONFORD, KOLOVSKY and CARTON.
Mr. Nicholas Scalera, assigned attorney, argued the cause for appellant.
Mr. R. Benjamin Cohen, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney; John De Cicco, Legal Assistant, on the brief).
The opinion of the court was delivered by KOLOVSKY, J.A.D.
Defendant was found guilty at a jury trial of having robbed one Gregory Green of $63 and appeals from the judgment of conviction.
*414 The State's proofs were that defendant was one of a group of five young men who attacked the 18-year-old victim on June 30, 1968 and that it was defendant who held a knife to the victim's throat and took some $63 from his pocket. Shortly after the robbery, as Green, his father and two policemen cruised through the area in a patrol car, Green spotted the group who had robbed him. The suspects fled; the police apprehended only defendant Gray, who was then and there identified by Green as the man who held the knife. A knife was found on Gray's person.
Defendant argues a number of reasons for reversal. Only one warrants any extended discussion.
There is no merit in the claim that it was plain error to admit evidence of the pretrial identification of defendant "contrary to the principles of United States v. Wade [388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)]." The point is not available on appeal since no objection to the identification testimony was offered at the trial. Moreover, Green's identification of defendant immediately after he was apprehended by the police was an on-the-scene identification to which Wade does not apply. State v. Satterfield, 103 N.J. Super. 291 (App. Div. 1968).
Equally lacking in substance are the contentions: (1) that the State had failed to make out a prima facie case; (2) that (a) comments by the prosecution in summation, (b) a nonresponsive answer by a defense witness  which was promptly stricken by the court  with respect to defendant's escape from custody, and (c) admission of evidence that defendant was not employed at the time of the offense, deprived him of a fair trial, and (3) that because the indictment did not charge defendant with armed robbery, it was error to permit proof that a knife was used in the robbery.
Defendant's principal attack is on the trial court's ruling which permitted Green to testify on redirect examination as to conversations between himself and defendant's girlfriend, Ida Belle Hunter.
*415 Green was the first witness called by the State. His testimony began on the first day and was concluded on the second day of the trial. Although he had stated positively to the police, both at the time of the on-the-scene identification and in a written statement, that it was defendant who had come behind him, put a knife to his neck and extracted $63 from his pocket, in his direct testimony on the first day of trial he equivocated. The equivocation continued when the jury returned to the courtroom after a recess during which, in the presence of the judge, the witness was questioned with respect to his written statement.
On the first day that he testified Green said that defendant "appeared to be" the person who committed those acts; "I got sort of like a glimpse [at this fellow] but I am pretty sure"; "I am not too sure whether he was the one who had the knife or not," but he is the one who demanded the money and took it from my pocket; "I could not see because I was caught from behind"; as the group left, "I turned around."
The following morning's session began with a colloquy in the absence of the jury, at the conclusion of which the judge ruled, over defendant's objection, that his order of sequestration required the exclusion from the courtroom during the State's case of witnesses whom defendant proposed to call, specifically Ida Belle Hunter, an alibi witness. Miss Hunter had been in the courtroom when Green began his testimony on the previous day and had remained there until the prosecutor requested, following the witness' statement that "he got a glimpse of the fellow," that she be directed to leave the courtroom.
When Green resumed the stand on the second day of trial his identification testimony was no longer uncertain. He had turned around when defendant released him so that he was standing face to face with defendant, who wore a blue fishnet shirt and yellow pants. Green made a "positive" in-court identification of defendant; there was "no question" about it, defendant was the man who held the knife and put *416 his hand in the witness' pocket. Green then described the events which followed, including the apprehension of defendant and his on-the-scene identification by the witness. Finally, Green identified the knife found on defendant as the knife which had been held to his throat.
Defense counsel's cross-examination of Green emphasized the differences between Green's testimony on the first and second days of the trial. On redirect the prosecutor sought to have Green explain why he had testified on the first day that he "wasn't sure." Defense counsel objected; the jury was excused. By way of proffer, the testimony continued before the trial judge. At its conclusion the judge noted:
As we stood yesterday, as far as the Jury knew, this man was in some doubt as to the identification. Today he has a different  his identification is more positive. It could be a problem. There is something that has either changed the man's testimony yesterday, or changed him today. I think the Jury is entitled to hear this evidence. * * *
The jury then re-entered the courtroom. Before Green resumed his testimony, Miss Hunter was called by the State and testified that defendant had been her boyfriend for three years.
Green then proceeded with his explanation of the reasons why he had given inconsistent testimony on the two days. He had never met Miss Hunter until the day of defendant's preliminary hearing in the municipal court. She had then approached him and offered to give him the $63 back if he would drop the charges and "would not testify right then and there." The witness' father, who was present, promptly told her, "No, that is out."
Green next saw Miss Hunter on the first day of trial when she came up to him just before he took the stand and asked, "was I sure that he was the right fellow that held me up." That encounter caused him to answer the way he did on the first day of trial
*417 I figured that [Miss Hunter] knew or might know some of the other fellows that were in on * * * the robbery. That is why I did not testify that he was the one, you know, because I was sort of  * * *. Thinking about what might happen, you know. If she knew some of the fellows and told them just how I had testified, knowing, you know, where I lived, and things like that. [Assistant Prosecutor]:
Q You were afraid? A Yes.
His redirect testimony concluded with the following questions and answers:
Q How do you feel this morning now?
A Well, I went home and thought it over. I told myself if, you know, I let him go this time the same thing will happen again to someone else, you know. So I figured I would go ahead and tell it the way it was.
Q To tell the truth?
A Yes.
Q This is the truth?
A Yes.
Q This is the man?
A Yes.
Q There is no doubt about it in your mind?
A No doubt about it.
On re-cross examination Green conceded that Miss Hunter had not threatened him or told him that she knew any of the other boys and that she had not given any indication that defendant put her up to offering the $63.
Defendant contends that the court erred in permitting Green "to testify concerning attempts to influence his testimony when it was uncontradicted that such attempts were not committed at the authorization or with the knowledge of the defendant." That contention would have merit if the evidence had been offered or admitted for the purpose of showing conduct of the defendant inconsistent with his claim of innocence. See State v. Hill, 47 N.J. 490, 500-501 (1966).
But there is nothing in the record even to suggest that that was the purpose of Green's testimony on redirect examination. On the contrary, the record makes it clear that it was offered  and we are satisfied that it was properly *418 admitted into evidence  as part of Green's description of the circumstances, both objective and subjective, which triggered his fears and led him to testify as he did on the first day of trial, this by way of explanation of his reasons for giving the variant testimony. State v. Walter, 14 N.J. Misc. 547, 186 A. 429 (Sup. Ct. 1936), aff'd o.b. 117 N.J.L. 547 (E. & A. 1937); 98 C.J.S. Witnesses § 621(b), at 635; People v. DeMarco, 44 Ill. App.2d 459, 195 N.E.2d 213, 215-216 (App. Ct. 1963); Commonwealth v. Del Vaccio, 299 Pa. 547, 149 A. 696, 698 (Sup. Ct. 1930); see also State v. Mulero, 51 N.J. 224, 227 (1968).
The cited authorities make it clear that testimony such as was admitted here may be offered to explain discrepancies or contradictions in a witness' testimony. See, for example, State v. Walter, supra, an appeal by a chief of police of the City of Trenton from his conviction for nonfeasance in office. In disposing of an issue analogous to that here presented, the court said:
The fourth point deals with alleged error in admitting certain testimony of Rednor. It was brought out on the cross-examination of Rednor that at one appearance before a grand jury he had given evidence at variance with his testimony at the present trial. He was then permitted to say that he had been threatened by three armed men at 3 o'clock in the morning while on his way from his garage to his home and told that if he testified against "the chief" before the grand jury, at his scheduled appearance later in the morning, he would get "bumped off." We think it was proper to permit him to given [sic] an explanation of any variance in his testimony on the two occasions, and that there was no error in admitting these questions. [186 A. at 432]
The judgment of conviction is affirmed.
CONFORD, P.J.A.D. (concurring).
In respect of the testimony as to Miss Hunter's approach to Green to drop the case, I have considerable reservations concerning the approach of the court in holding this testimony admissible over defendant's objection. In all of the cases relied upon by the court and the State the defense was held to have invited the testimony fortifying the credibility of the State witness *419 because of the projection by the defense of an attack on the credibility of the witness by asserting matter extrinsic to the testimony of that witness, e.g., a prior inconsistent statement. Here the defense simply stressed the equivocation inherent in the testimony of the State's witness. I know of no authority upholding the buttressing by the State of its own witness in such a situation, particularly by a means as harmful to the defendant as that here used. And see Evidence Rule 20, last sentence.
However, I nevertheless conclude that the interests of justice were not disserved by the presence in the case of the proofs concerning Miss Hunter's approach to Green. This evidence bore heavily on the credibility of Miss Hunter, who was the principal support for defendant's claim of alibi, and it was properly in the case for that purpose, see State v. Allgor, 88 N.J.L. 740 (E. & A. 1916), even though its introduction was neither sought nor allowed on that ground. So viewed, the incidental harm to defendant cannot be regarded as reversibly prejudicial to him.
I agree with the opinion of the court as to the lack of merit of defendant's other grounds of appeal.