216 N.J. Super. 588 (1987)
524 A.2d 826
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LEANDER WAYNE JOHNSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 10, 1986.
Decided January 22, 1987.
*596 Before Judges KING and DEIGHAN.
Alfred A. Slocum, Public Defender of New Jersey, attorney for appellant (Barbara J. Lieberman, Designated Counsel, of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Cathleen Russo Delanoy, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Defendant Leander Wayne Johnson appeals from a jury conviction of second degree aggravated assault contrary to N.J.S.A. 2C:12-1b(1) (count one); third degree aggravated assault contrary to N.J.S.A. 2C:12-1b(2) (count two); possession of a handgun without a permit contrary to N.J.S.A. 2C:39-5b (count three); possession of a handgun for an unlawful purpose contrary to N.J.S.A. 2C:39-4a (count four); and possession of a handgun by a previously convicted felon contrary to N.J.S.A. 2C:39-7 (count five). Count five was severed for the purposes of trial. The State's motion for an extended term as a persistent offender pursuant to N.J.S.A. 2C:43-7 and N.J.S.A. 2C:44-3 was granted. On count one defendant was sentenced to a term of 15 years with seven and one-half years parole ineligibility. Counts two and four were merged with count one for sentencing and on count three he was sentenced to a consecutive term *597 of four years. Both sentences were imposed consecutive to any sentence imposed for parole violation. A $125 Violent Crimes Compensation Board Penalty was also imposed.
The following facts developed during trial. On the evening of June 9, 1983, Aoran Green, a security worker for the Newark Housing Authority, went to meet a friend at 212 Prince Street in Newark. His friend was not there, and at approximately 10:30 p.m., he started to leave the apartment building when he encountered four men on the stairway. One of the men was defendant Leander Johnson and another, whom Green recognized as a former school mate, was Michael Jackson. Although he did not know the defendant's name, Green recognized him because he had gone to grammar school with defendant and had seen him around the projects. Green did not recognize the other two men. When Jackson greeted Green and called him by name, a person other than the defendant, started arguing with Green about having sent detectives to his girl friend's house. The argument ended when one of the men suggested that they all forget about it. Green then left the building alone and proceeded to his automobile.
As Green approached his car he began talking to an acquaintance, Marshal Boulers, and, while conversing with Boulers, he put some articles in the trunk of his car. When Green turned around defendant was standing in front of him. As the man who had argued with Green about his girl friend approached, defendant stepped back and fired a shot at Green's kneecap. The second man then said, "I'm going to kill him" and also fired a shot. After being shot Green apparently fell to his knees and "started crawling into the car." The other men fled, because, according to Green, "they thought I was going under the seat to get a gun." Green got into his car and drove to police headquarters where he gave the police a description of his assailants. Green was then taken to a hospital where he remained for 10-12 days. On June 12, two days after the shooting and while still in the hospital, Green reviewed several *598 books of photographs brought to him by the police and selected defendant's photo as the assailant.
On June 25, Green was in Bamberger's in Newark talking with two detectives from the Newark Police Department who worked there as part-time security officers. Defendant by happenstance walked into the store; Green immediately identified him and the officers arrested the defendant. Defendant told the detectives that he did not know Green and when asked his name gave the officers a false name.
At trial defendant testified that he spent the entire evening of June 9, 1983 with his girl friend, Carolyn Freeman. Both Ms. Freeman and her mother confirmed that defendant was at their home on the evening of the shooting. Defendant testified that he had known Green all of his life because they had gone to grammar school together. He also testified that Green and another man had recently accosted him, searched him, handcuffed him, drove him around the block and then let him go. Defendant stated that on that occasion harsh words were exchanged. He indicated that this episode occurred in June, but did not give the year.
Other facts developed at trial will be discussed under the appropriate issue.
On appeal defendant contends: (1) that hearsay statements from the argument and descriptions of the attackers given by the victim should not have been admitted; (2) that the State improperly bolstered the credibility of the victim and attacked the credibility of the other eyewitness and defendant; (3) that comments of the prosecutor during summation were improper, and (4) that defendant was denied effective assistance of counsel.
We disagree with defendant's contentions and we affirm.

I.
Defendant contends that the trial court erred when it admitted prejudicial hearsay, which was not objected to, on two *599 separate instances. The first alleged hearsay involved statements by a third party that led to the argument in the stairway just prior to the assault and the second instance of hearsay involved identification statements by Green to the investigating officer.
Since no objection to either out-of-court statement was raised at trial, any error will not be grounds for reversal unless it is clearly capable of producing an unjust result. R. 2:10-2; State v. Macon, 57 N.J. 325, 333 (1971). The possibility of an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." Macon at 336; State v. Melvin, 65 N.J. 1, 18-19 (1974). We find that there was no plain error, nor do we find any merit to either of defendant's contentions concerning these two hearsay issues.

A.
First, defendant complains about the following testimony by Green prior to the assault:
Q. Now what took place on the staircase?
A. Well, the guy, Michael Jackson, he said, "How you doing, Aoran?".
Q. Michael was one of these four people?
A. Yes.
Q. Then the other guy said, he said, "Is that Aoran Green?", so he said, "Yes.". So he said, "Why did you bring detectives to my girl friend's house?".
Q. Who said that?
A. The other defendant that's not in court yet.
Defendant argues that the statements made by a third person violated the hearsay rule and defendant's right to confrontation. Defendant asserts that the evidence was harmful because it suggested a motive for the shooting. The State responds that: (1) no objection was made at trial; (2) the statement was not hearsay because it was not offered to prove the truth of the assertion; (3) the statement did not inculpate defendant; (4) the Confrontation Clause does not exclude all hearsay, and (5) if it *600 was hearsay, it was admissible under Evid.R. 63(9) as a statement by a coconspirator.
An out-of-court statement is inadmissible as hearsay if it is "offered to prove the truth of the matter stated." Evid.R. 63. Here, the statement was not "offered to prove the truth of the matter stated" and therefore was not hearsay. It was offered to establish the fact that an argument had occurred in the stairway prior to the shooting. There was no violation of the hearsay rule because the truthfulness of the statement was not at issue. See State v. Davis, 50 N.J. 16, 28-29 (1967), cert. den. 389 U.S. 1054, 88 S.Ct. 805, 19 L.Ed.2d 852; State v. Smith, 113 N.J. Super. 120, 138 (App.Div. 1971), certif. den. 59 N.J. 293 (1971). The statement was non-accusatory and did not implicate defendant in the argument or the subsequent crime. See State v. McKiver, 199 N.J. Super. 542, 548 (App.Div. 1985). Moreover, if Green had merely testified that there was an argument on the stairway without a recital of the context of the conversation, his statement would have been admissible. The statements were made merely to establish that there was a discussion between Green and another person concerning another incident. We find no error in the admission of the statements by a third party that led to an argument in the hallway just prior to the assault. In view of our determination it is unnecessary to pass upon the remaining responses by the State to this issue.

B.
Defendant also raises as an issue the admission of testimony by Detective Pallaro that Green gave police a detailed description of the two individuals who shot him and that he knew one of the individuals. Defendant points out that similar statements were also made by Detective Lytwym. He asserts that the testimony by these two officers violates the hearsay rule stated in State v. Bankston, 63 N.J. 263 (1973). The State answers that Pallaro's testimony "was the result of [his] normal *601 business activity" and was inherently trustworthy. The State also incorrectly asserts that the statement is not hearsay because Green testified at trial.
Detective Pallaro, who questioned Green at the police station as he waited for an ambulance, testified that Green gave him descriptions of the two men and told him that he knew one of them. At trial Pallaro recounted the descriptions that Green had given to him. Lytwym, who was with Green in Bamberger's when the defendant was arrested, testified that Green pointed to defendant and said, "There's the man who shot me."
Initially, Bankston is not applicable under the circumstances of this case. Bankston and its progeny involved situations where police are required to explain why they approached a suspect. 63 N.J. at 268. The cases all involved tips by anonymous informers. See State v. Douglas, 204 N.J. Super. 265, 273 (App.Div. 1985), certif. den. 102 N.J. 378 (1985); State v. Thomas, 168 N.J. Super. 10, 15 (App.Div. 1979); State v. Long, 137 N.J. Super. 124, 133 (App.Div. 1975), certif. den. 70 N.J. 143 (1976). Here, we are dealing with an out-of-court description by the victim, Green who identified defendant at trial.
Under Evid.R. 63(1)(c), where identification is at issue, a statement is admissible if previously made by a person who is a witness at the trial if it is a prior identification of a party and "made under circumstances precluding unfairness or unreliability." See State v. Williams, 80 N.J. 472, 480 (1979). Lytwym's testimony clearly qualifies as a prior identification. Cf. State v. Sinclair, 49 N.J. 525, 546-547 (1967) (statements which bear on issues other than identification should not be admitted). Pallaro's testimony regarding the description may be considered a prior identification as well. Cf. State v. Ginardi, 111 N.J. Super. 435 (App.Div. 1970), aff'd 57 N.J. 438 (1970) (composite sketch admissible as prior identification); Evid.R. 20, comment 4 at 198 (Anno. 1986).
Furthermore, on cross-examination defense counsel questioned Green concerning the description he gave the police *602 before the detective testified. Green repeated the description on redirect examination. Since any errors were "induced, encouraged or acquiesced in or consented to by defense counsel" they may not be the basis for reversal. State v. Harper, 128 N.J. Super. 270, 277 (App.Div. 1974), certif. den. 65 N.J. 574 (1974). Defense counsel opened the door to this line of questioning and did not object at trial, thus preventing any curative instructions by the court. See State v. Douglas, 204 N.J. Super. at 273-274.
The statement by Green to the investigating officers was admissible as prior identifications under Evid.R. 63(1)(c), and in our view the identifications were "made under circumstances precluding unfairness or unreliability." Id.

II
Defendant contends that the court improperly admitted testimony of Green's good habits and character, and his prior assistance to the police in narcotics investigations. He asserts that Evid.R. 47 (Character Trait as Proof of Conduct), was violated because the jury was asked to infer that Green acted a certain way due to evidence of his prior good conduct. The State counters that defense counsel created an inference as to Green's "bad character" by certain allegedly improper questions and that the prosecutor merely rebutted this inference. The State does not respond to the contention concerning Green's prior relationship with the police.

A
On cross-examination defendant asked Green whether he had been drinking that day, whether he was under the influence of narcotics that night and whether the paper bag he placed in the trunk contained any contraband. Over defendant's objection, the State then elicited from Detectives Pallaro and Lytwym that Green did not smoke, drink, deal or use drugs on the issue of Green's credibility.
*603 Contrary to the State's contention, evidence of a witness' sensory or mental defects has unquestionable relevance in attacking a witness' credibility. N.J. Rules of Evidence (Anno. 1986) comment 10 at 210. "Mental abnormality" at the time of observing the facts is provable on cross-examination or by extrinsic evidence bearing on credibility, McCormick on Evidence (3 ed. 1984), § 45 at 104. It is a standard ground for impeachment. Id. at 105. A form of abnormality exists when the witness is under the influence of drugs or drink and may be used to impeach the witness' testimony. Ibid. See State v. Franklin, 52 N.J. 386 (1968) (reversible error to restrict defendant's examination concerning witness' alcoholism and state of intoxication at the time of the offense; evidence relevant on credibility). See also State v. Crudup, 176 N.J. Super. 215 (App.Div. 1980) (cross-examination of witness on any factors affecting visual perception at the time of the event proper).
The testimony of Pallaro and Lytwym corroborated Green's testimony that he did not drink or use narcotics. For the purpose of supporting the credibility of a witness, the party calling the witness may examine him and introduce extrinsic evidence relevant upon the issue of credibility, Evid.R. 20, and see comment 4 at 198 (Anno. 1986). A party may introduce extrinsic evidence relevant to credibility, whether or not that extrinsic evidence bears upon the subject matter of the action. Id., Comment 1 at 190. Impeachment is an attack upon credibility, McCormick, supra, § 49 at 115, and any deficiency of the senses which would lessen the ability to perceive facts testified to by the witness is an attack on the credibility of the witness. Id., § 45 at 104. The testimony of Pallaro and Lytwym was proper to impeach any inference attacking Green's credibility created on cross-examination by attempting to establish a deficiency in his sensory perceptions caused by drug and alcohol use at the time of the offense.
Evid.R. 47 permits proof of a character trait for the purpose of drawing inferences as to the conduct of a person on a *604 specific occasion but only by opinion testimony, reputation evidence or evidence of a conviction, Here the State was attempting to establish that Green did not drink or use drugs in order to show that he did not indulge on the date of the assault. The testimony of Pallaro and Lytwym expressed their opinion or knowledge of Green's reputation and was admissible under Evid.R. 47 to counteract the insinuation of alcohol or drug use by Green even though he directly denied such use.

B
Defendant further contends that admission of testimony regarding Green's past work with the police is reversible error.
As noted earlier, on cross-examination defendant was asked whether he had been drinking that night, whether he was under the influence of narcotics that night and whether he had any contraband in the bag which he had been carrying. We held above that the questions regarding his use of alcohol or narcotics on the date in question were clearly proper and relevant to the issue of Green's ability to perceive. Furthermore, we determined that the State was permitted to rebut this inference, not only by testimony from the victim, but also through corroboration by other witnesses. It was in rebuttal of the inference that defendant's perception was impaired that the testimony contended to be improper was elicited.
The State sought to corroborate Green's testimony that he was not under the influence of alcohol or drugs at the time of the incident. It could establish this fact in one of two ways: (1) testimony by a witness who was with Green on the date in question who would have observed that Green had used no drugs or alcohol at that time, or (2) through evidence of Green's reputation as a teetotaler, non-smoker or non-drug user to show that he did not indulge on the day of the attack. The State chose the latter method. The second method had the added benefit to the State of demonstrating that the victim was not a regular drug or alcohol user. Contrary to the State and the *605 trial court's contentions, the prosecutor's questions regarding Green's use of drugs or alcohol on the date in question attacked only Green's sensory abilities. They did not necessarily infer that Green was a drunk, junkie or drug dealer, or that he was somehow not a law-abiding citizen.
Nonetheless, in order to permit Pallaro to testify to Green's reputation regarding drugs and alcohol, the State had to lay a foundation to show that Pallaro knew Green well enough to testify as to his reputation in the community. In pursuit of this objective, the State asked Pallaro whether he knew Aaron Green prior to the date in question and the nature of the relationship. At this point defense counsel objected. The judge permitted the question as relevant to the victim's credibility. Pallaro then testified that Green was a police informant with whom he had worked in the past. Pallaro then gratuitously volunteered that "the information [given by Green] was always good."
Defendant now contends that this testimony was improper because it asked the jury to infer that Green's testimony in this case was "good" or truthful because he was known to have been truthful in the past. However, an impeached witness may be sustained by testimony in the form of opinion or evidence of reputation. Evid.R. 46; 47(a), (b). Where a trait of a person's character is relevant, evidence of reputation with reference thereto at a relevant time in a group with which the person then habitually associated is admissible to prove the truth of the matter reputed. Evid.R. 63(28).
Before testimony sustaining the character or reputation of a witness may be admitted, such character or reputation must be attacked or impeached. It is not necessary that the impeachment be successful; an attempt is sufficient. 98 C.J.S., Witnesses, § 532a(1); 4 Wigmore, Evidence, § 1104(a) (Chadburn rev. 1972). A direct impeachment of moral character by testimony, reputation or personal opinion, to a general trait of character plainly satisfies the rule and opens the way to *606 rehabilitate a witness by testimony of good character. Id. § 1105(A). "Where, without actually introducing testimony, the opponent effectively insinuated the witness' impeachment, his good character is then proper in rebuttal." Wigmore, § 1104(A) at 235. (Emphasis in original). Though the witness may deny the things insinuated, a jury may often believe that, though denied, there is some foundation for the insinuation if witnesses are not called to convince them to the contrary. Wigmore, § 1106(A). at 237.
We emphasize that the testimony objected to was volunteered during the course of proper questioning by the State. Although the questions regarding Green's drug and alcohol use on the date in question did not impugn Green's character for honesty, truthfulness and veracity, or his reputation as a law-abiding citizen, further questions by defense counsel did attack Green's character. It will be recalled that defense counsel also asked Green whether he had any contraband in the bag he was carrying. This question had nothing to do with the witness' ability to perceive. It did, however, infer that the witness was not a law-abiding citizen. Consequently, there was an attack on Green's credibility as a truthful, honest, law-abiding person. Although the rebuttal to this attack came about inadvertently, the State could have properly rebutted this inference directly by evidence of Green's reputation in the community as a truthful, honest, law-abiding citizen.
In order to support Green's credibility it was proper for the State to introduce extrinsic evidence in relation to the issue of credibility provided that there was no violation of Evid.R. 22 and 47. Under Evid.R. 22(c), (d), evidence of traits of character, other than honesty or veracity, and evidence of specific instances of conduct are inadmissible. The statements by the police officers were directed to the reputation of Green for honesty, truthfulness, veracity and also his reputation for "being a law abiding citizen", and were admissible. State v. Micci, 46 N.J. Super. 454, 463 (App.Div. 1957). The police officers' testimony *607 expressed their opinions of Green and his reputation within the police community for these traits of character. The testimony was not only of honesty and veracity but also of his "being a law-abiding citizen". The testimony was general without referring to specific instances of conduct. Evid.R. 22(c), (d). If the testimony had referred to a specific case or instance, then the rule would have been violated. Cf. State v. Mondrosch, 108 N.J. Super. 1 (App.Div. 1969), certif. den. 55 N.J. 600 (1970) (evidence of witness' past actions to effect credibility violated Evid.R. 22(d)). The testimony that Green was an informant and that the "information was always good" bolstered Green's reputation for veracity in providing accurate and reliable information in the past. Cf. State v. Stefanelli, 153 N.J. Super. 452, 457 (App.Div. 1977), rev'd on oth. grds. 78 N.J. 418 (1979) (testimony of law enforcement officials as to cooperation by an accomplice witness not supportive of credibility but the relationship of witness with prosecutor's office)
With respect to the rehabilitative testimony of Green's character and reputation a limiting instruction, pursuant to Evid.R. 6, restricting the testimony as to only the credibility of Green should have been given. However, the failure of defendant to request such instruction does not constitute plain error. State v. Lair, 62 N.J. 388 (1973).
Moreover, the admission of the testimony concerning the prior activities of Green is harmless error and not of such a nature as to have been clearly capable of producing an unjust result. R. 2:10-2; State v. Macon, 57 N.J. 325, 336 (1971). Not any possibility of an unjust result will cause reversal of a conviction. The possibility of an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Melvin, 65 N.J. 1, 18-19 (1974); Bankston, 63 N.J. at 273.
If it is sufficiently clear that another trial conducted without committing a particular error would lead to the same result, using judicial resources to conduct the retrial is obviously *608 inefficient. McCormick, supra, § 182 at 533, citing note 64, Cornell L.Rev., 538, 538 (1979). Even if the error is of constitutional dimension, it will be held harmless if it is clear beyond a reasonable doubt that the jury verdict would have been the same absent the error. United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); Chapman v. California, 386 U.S. 18, 23-24, 87 S.Ct. 824, 827-28, 17 L.Ed.2d 705 (1967); Macon, 57 N.J. at 336-339. "Our review of the record ... leaves us with no reasonable doubt that the jury ... would have reached the same verdict without hearing [the testimony if it was improperly admitted]." Milton v. Wainwright, 407 U.S. 371, 377, 92 S.Ct. 2174, 2178, 33 L.Ed.2d 1 (1972); accord Fahy v. Connecticut, 375 U.S. 85, 86, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963).

C.
Defendant argues that the State's attack on the credibility of Marshall Boulers, one of its own witnesses, was improper. The State claims that it was surprised by Boulers testimony and merely sought to neutralize it. Boulers, who witnessed the shooting, was called by the State and testified that he saw the gunman, could identify him, but that defendant was not their man. He then admitted that he had previously told an investigator for the prosecutor that he saw the shooting but did not see who shot Green. He stated that he had lied to the investigator because he was scared, although he did not explain why he was afraid. Defense counsel did not object to this testimony. As previously noted, under Evid.R. 20, with certain exceptions not applicable here, for the purpose of impairing or supporting the credibility of the witness, any party including the party calling the witness may examine him and introduce extrinsic evidence relevant to the issue of credibility.
Since the prior statement was not written, recorded or given under oath, neutralization is improper unless there has been surprise. Evid.R. 63(1)(a). The State must also show that *609 the testimony was adverse or contrary to its case. See State v. Gallicchio, 44 N.J. 540, 546 (1965). If the State had no prior indication that the witness would contradict the prior statements, a preliminary hearings should have been held after the testimony sought to be neutralized was given. Id. at 547-548. See Evid.R. 8(1). The jury should then be instructed that the prior statement is not admitted to prove the truth of the matter therein asserted. Gallicchio, 44 N.J. at 548; Evid.R. 20, comment 3 at 194 (Anno. 1976).
In the present case it is obvious that the State was surprised based on Boulers' own admission that he had previously lied to an investigator from the Prosecutor's Office. The testimony was clearly adverse as he stated that defendant was not the guilty party. See Gallicchio at 545. However, the court did not follow the proper procedure before allowing the prosecutor to impair Boulers credibility. Further, no limiting instruction was given at the time the testimony was offered or during the court's charge to the jury. See Gallicchio at 548. Considering defendant's failure to object, the fact that neutralization was accomplished without extrinsic evidence and in view of the fact that neither of Boulers' statements inculpated the defendant, the error in failing to follow the proper procedure and failing to give limiting instructions pursuant to Evid.R. 6 was harmless. See State v. Stefanelli, 78 N.J. at 436.

III
Defendant objects to five instances of allegedly improper comments by the prosecutor during his summation. Defendant asserts that the prosecutor's comments in each instance were beyond the scope of the testimony adduced at trial. The State answers that there was no plain error because all of the comments were based upon evidence in the records. "Ordinarily a defendant will not be heard to claim prejudice if defense counsel does not make a timely objection to improper remarks." State v. Farrell, 61 N.J. 99, 106 (1972). A timely objection is *610 necessary to provide the court and the prosecutor with an opportunity to cure any error caused by an improper remark State v. Johnson, 31 N.J. 489, 511 (1960), and signifies that defense counsel did not believe that the comments were prejudicial in the atmosphere of the trial. State v. Marks, 201 N.J. Super. 514, 533-534 (App.Div. 1985), certif. den. 102 N.J. 393 (1986). Defendant's failure to object to the comments at trial means that the errors "need not be dealt with in the same way as those raised by a timely challenge." State v. Kelly, 97 N.J. 178, 218 (1984).
The prosecutor is not simply another attorney who represents the State; he has an obligation to play fair and insure that justice shall be done. Marks, 201 N.J. Super. at 534-535; see Johnson, 31 N.J. at 510-511. While he is allowed a wide latitude during summation, State v. Kelly, 97 N.J. at 218; State v. Perry, 65 N.J. 45, 47 (1974), the prosecutor's comments must be confined to the facts in evidence and the reasonable inferences which may be drawn therefrom. Id. at 47. Particular remarks during summation must be evaluated in the setting of the entire trial. Johnson, 31 N.J. at 513.

A.
Defendant objects to the prosecutor's argument on summation that Green was not a drug dealer, drunk or dope user, but was trying to clean up the neighborhood. There was testimony that Green was an informer who had previously given the police reliable information. There was also testimony that the argument on the stairway resulted from Green's work with police regarding a stolen coat. We have already determined the testimony that Green was an informer and the statements in the stairway on the evening of the crime were admissible. Therefore, the remarks of the prosecutor during summation on these subjects were a reasonable inference from the facts and evidence.

*611 B.
Defendant objects to the prosecutor's suggestion that Boulers lied at trial because he was afraid of the defendant. Boulers admitted that he had given a prior contradictory statement. There was testimony that Boulers was on the same floor as defendant in the county jail and had contact with him every day. There was also testimony from Boulers that he was scared when he gave the original statement. The prosecutor also argued that Boulers would rather perjure himself than face defendant.
Testimony of threats made by a defendant against a witness with the intent to induce him not to testify against the accused is admissible. State v. Hill, 47 N.J. 490, 500 (1966). This type of evidence illuminates "defendant's consciousness of his own guilt" and is not subject to the restriction of Evid.R. 55. See State v. Lassiter, 197 N.J. Super. 2, 8 (App.Div. 1984). Further, testimony that the witness was afraid may be offered notwithstanding the fact that the attempts to influence the witness' testimony were not committed with the authorization or knowledge of defendant. State v. Gray, 112 N.J. Super. 412, 417-418 (App.Div. 1970), certif. den. 57 N.J. 596 (1971).
There was no error by the prosecutor in attempting to establish that Boulers was intimidated by the defendant while both were incarcerated in the county jail. Again, the prosecutor's argument during summation was a reasonable inference from facts in evidence.

C.
Defendant objects to the prosecutor's interruption of his summation in order to tell the jury that Boulers was not found until shortly before trial because his name was spelled differently when he was incarcerated. Initially, defense counsel opened the door to any error, see State v. Harper, 128 N.J. Super. at 277, when he stated in his closing argument that the police report, which had not been entered into evidence, *612 provided the prosecutor with Boulers name in June 1983. The prosecutor then interrupted and explained that the delay in locating Boulers was due to the fact that the police report referred to Marshall "Bouls." It is evident that both parties improperly commented upon facts not in evidence but defense counsel precipitated the counter-action by the prosecutor.
The situation is comparable to the admission of inadmissible evidence which the adversary is then permitted to answer. Professor McCormick characterizes this as "fighting fire with fire." McCormick, supra, § 57 at 146. The statement of defense counsel on summation that the police report provided the prosecutor with Boulers name in 1983 was improper and inadmissible even though relevant to the issues. It was probably damaging to the prosecutor's case or at least prejudicial. Since the prosecutor seasonably objected to the statement by defense counsel he then is entitled to give an answering statement as a matter of right to refute the damaging statement. Id. at 147-148.

D.
Defendant objects to the prosecutor's inference that defendant was guilty because he failed to report to police headquarters after learning he was a suspect, citing State v. Deatore, 70 N.J. 100, 112-113 (1976) and State v. Ripa, 45 N.J. 199, 203-205 (1965). Both cases dealt with the improper use of defendant's silence while in custody. The court in Deatore, however, specifically distinguished situations where defendant's conduct after a crime is inconsistent with his innocence. 70 N.J. at 108. In United States v. Ballard, 423 F.2d 127 (5 Cir.1970), the court stated
[i]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself. [at 133; quoting Wigmore, Evidence, § 276 (3d Ed. 1940)].
Cf. State v. Lassiter, 197 N.J. Super. at 8 (evidence of threats against witness by defendant admissible on issue of consciousness *613 of guilt); State v. Cantalupo, 187 N.J. Super. 113, 123 (App.Div. 1982), certif. den. 93 N.J. 274 (1983) (evidence of flight admissible on issue of consciousness of guilt). See State v. Plowden, 126 N.J. Super. 228 (App.Div. 1974), certif. den. 64 N.J. 504 (1974) (comments upon the failure of alibi witness to report to police on behalf of defendant held proper since such failure is a factor in weighing credibility). Defendant's failure to turn himself in for two weeks when he knew that the police were looking for him is fair comment on the issue of consciousness of guilt. There is no contention that the argument was a departure from the facts and reasonable inferences adduced at trial. Moreover, the prosecutor's remark was not clear and unmistakable nor did it substantially prejudice the defendant's fundamental rights to have the jury fairly to evaluate the merits of his defense. State v. Bucanis, 26 N.J. 45 (1958), cert. den. 357 U.S. 910, 78 S.Ct. 1157, 2 L.Ed.2d 1160 (1958).

E.
Finally, defendant objects to the prosecutor "testifying to the effect that the police officers begged Green to let the jury know that he was working with the police." The following excerpt contains the relevant comments by the prosecutor on summation regarding this issue:
What did Aoran Green say? No sir, I had papers in the bag. Oh, you always keep papers in the bag? I keep papers in the bag. I wasn't drunk because I don't drink and I wasn't high because I don't do drugs. Then as Aoran told you, He and I sat down in my office after the first days of testimony, I said Aoran they're out trying to make you someone that you're not. We can't let them get away with it because if they do, he's going to get away with shooting you. What we're going to do, Aoran, if it's okay with you, and I'm asking you, because it could put your life on the line, let's tell them and prove to them that you don't do drugs and let's prove it to them by telling them that you supply police with information, that you're an informant and not a street informant, he's not the junkie in the jail which you have something there, instead of sending them to prison, they'll give you something else. That's not the type of person Aoran Green is. Aoran, let's tell them you work with Pallaro, let's tell them you work with Lytwym, let's tell them you don't do drugs, that you are instrumental in people being arrested and prosecuted. Then the jury 
THE COURT: Mr. Haggerty, please confine you remarks to what the witness said.

*614 MR. HAGGERTY: And I believe this is what he testified to.
MR. BLASI: I make no objection to this, judge. He may go on.
It is obvious from the comments that the prosecutor said nothing about the police begging Green to reveal his relationship with the police. It is also clear that the conversation between Green and the prosecutor was not part of the evidence. The prosecutor was, in effect, testifying during his summation. Although the trial judge interrupted the prosecutor, defense counsel did not find the comments objectionable. "[N]ot every departure from the facts and reasonable inferences necessarily calls for a reversal." Johnson, 31 N.J. at 511. Cf. Perry, 65 N.J. at 54; Marks, 201 N.J. Super. at 533.
Since Judge Villaneuva intervened promptly and decisively, State v. Stewart, 162 N.J. Super. 96 (App.Div. 1978), any impropriety of the comment was timely eradicated. See State v. Ruiz, 127 N.J. Super. 350 (App.Div. 1974), (timely curative instructions by the court), mod. o.g. 68 N.J. 54 (1975). See also State v. Winter, 96 N.J. 640 (1984). Further, the judge gave the jury the standard instruction that the attorneys' comments on the evidence should be disregarded if they are not in accordance with its recollections of the facts. Such an instruction may cure errors made by the prosecutor, State v. Serret, 198 N.J. Super. 21, 28 (App.Div. 1984); contra Farrell, 61 N.J. at 107. At any rate, the prosecutor's comment on this issue is clearly not capable of producing an unjust result. R. 2:10-2.

IV.
Defendant argues that his trial attorney was incompetent in failing to request appropriate hearings, failing to object to allegedly hearsay statements, failing to attempt to rehabilitate defendant's character and failing to request a charge for a lesser included offense. The State answers that the alleged errors, which constituted trial strategy, did not result in the admission of probative evidence and did not prejudice defendant.
*615 An accused's right to be represented by counsel, a fundamental part of our criminal justice system, United States v. Cronic, 466 U.S. 648, 653, 104 S.Ct. 2039, 2043, (1984), 80 L.Ed.2d 657, 664 (1984) means the right to the effective assistance of counsel. Id.; McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763; State v. Sugar, 84 N.J. 1, 17 (1980). It is presumed "the lawyer is competent to provide the guiding hand that the defendant needs"; the burden rests on the accused to demonstrate a constitutional violation. Cronic, 466 U.S. at 658, 104 S.Ct. at 2046, 80 L.Ed.2d at 667.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), decided the same day as Cronic, Justice O'Connor established a two-part test which defendant must meet in order to prove counsel's performance was so inadequate as to require reversal of his conviction. First, "defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Second, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Accord Darden v. Wainwright, 477 U.S. ___, ___, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144, 159 (1986). A reasonable probability is defined as probability sufficient to undermine confidence in the outcome. Ibid. This test replaces the New Jersey standard which had required reversal only if counsel's errors reduced the trial to a "farce or mockery of justice." State v. Edge, 57 N.J. 580, 593 (1971); State v. Pace, 171 N.J. Super. 240, 251 (App.Div. 1979).
Moreover, in reviewing counsel's performance, every effort must be made (1) to eliminate the distorting effects of hindsight, (2) to reconstruct the circumstances of counsel's challenged conduct and (3) to evaluate the conduct from counsel's perspective at the time. Strickland, 466 U.S. at 689, 104 *616 S.Ct. at 2065, 80 L.Ed.2d at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Id. at 701, 104 S.Ct. at 2071, 80 L.Ed.2d at 702. Accord Darden v. Wainwright, 477 U.S. at ___, 106 S.Ct. at 2474, 91 L.Ed.2d at 160. In evaluating a claim the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.
Defendant identifies five specific errors by trial counsel:
(1) Failure to request a Sands[1] hearing. At trial defendant testified and defense counsel specifically rejected a Sands hearing, however, no prejudice has been demonstrated. The key to exclusion of convictions of crimes under Sands is remoteness, which cannot be determined by the passage of time alone. State v. Sands, 76 N.J. 127, 144 (1978). Defendant's prior convictions for robbery and weapons offenses were from four to six years old. They were serious crimes, ibid., and more than likely would have been admitted by the court if a hearing had been held. Cf. State v. Hughes, 128 N.J. Super. 363, 369 (App.Div. 1974), (counsel is not obligated to make a frivolous motion), certif. den. 66 N.J. 307 (1974).
(2) Failure to request a Miranda hearing. The problem with determining this issue is that facts were not developed at trial to indicate whether there was a violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Both Green and Lytwym testified that defendant denied knowing Green when detained but later at trial defendant testified that he had known Green all his life. Lytwym did not indicate whether he gave defendant Miranda warnings nor did he testify to any incriminating statements made by defendant. Since defendant testified, most assuredly if there had been any *617 violations it would developed through defendant's testimony at trial.
(3) Failure to object to statements made during argument. Since we have concluded that there was no error on any of these issues, they may not be the basis for an assertion of ineffective counsel.
(4) Failure to ask Boulers about the cause of his fear. As previously noted Boulers testified that he was scared but he did not indicate the source of his fear. Defendant argues that if Boulers had been asked, "he would have testified that he was afraid of an unknown individual who was the actual shooter." This is pure speculation; moreover, Boulers might have stated that he was scared of defendant. We previously pointed out in State v. Gray, supra, the reason or source for Boulers alleged fear when he gave the previous inconsistent statement is irrelevant; the fact of the inconsistency was the only relevant issue.
(5) Failure to request that fourth degree assault be charged as a lesser included offense. Defense counsel did not request such an instruction after the issue was raised by the trial judge. This failure to request an instruction generally precludes defendant from raising the issue on appeal. State v. Saulnier, 63 N.J. 199, 205-206 (1973). Nevertheless, there was no "rational basis" to have charged defendant for simple assault. Id. at 206-207. Simple assault is merely a disorderly persons offense and is inapplicable (1) because the attack resulted in serious bodily injury; (2) there was no evidence of negligence, and (3) as the victim was not merely placed in fear of injury. N.J.S.A. 2C:12-1a(1), (2), (3). See Hughes, supra. Shooting a victim in the knee with a pistol could never under any circumstances constitute merely disorderly conduct.
Defendant has failed to overcome the presumption of effective counsel. We are satisfied that the errors complained of, even if valid, did not effect the outcome of the proceeding.
Affirmed.
NOTES
[1] State v. Sands; 76 N.J. 127 (1978).