**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5868-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

W.B.,

     Defendant-Appellant.

_____

> Argued November 5, 2020 – Decided  December 18, 2020
>
> Before Judges Fuentes, Whipple and Firko.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 16-10-2932 and 17-02-0479.
>
> Douglas R. Helman, Assistant Deputy Public Defender argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Douglas R. Helman, of counsel and on the brief).
>
> Caroline C. Galda, Special Deputy Attorney General/Acting Assistant Prosecutor argued the cause for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Caroline C. Galda, of counsel and on the brief).

PER CURIAM

Defendant, W.B.,[1] appeals from two May 2018 judgments of conviction for unlawful possession of weapons, N.J.S.A. 2C:39-5(b), and unlawful possession of weapons based on his prior conviction under the No Early Release Act (NERA)[2], N.J.S.A. 2C:39-5(j). For the reasons stated herein, we reverse.

Defendant raises the following issues on appeal:

> POINT I: THE JURY CHARGE DEPRIVED [W.B.] OF A FAIR TRIAL BECAUSE THE JUDGE FAILED TO PROPERLY INSTRUCT THE JURY HOW TO EVALUATE THE NEUTRALIZATION TESTIMONY.
>
> POINT II: THE PROSECUTOR ENGAGED IN MISCONDUCT REQUIRING REVERSAL WHEN, IN SUMMATION, HE REPEATEDLY STATED THAT THE POLICE DID NOT HAVE A MOTIVE TO LIE, AND CHARACTERIZED THE DEFENSE THEORY AS A 'CONSPIRACY'.
>
> POINT III: THE JUDGE BELOW ERRED IN DENYING THE MISTRIAL MOTION BECAUSE OFFICER WILSON'S COMMENT THAT [W.B.] WAS RECENTLY IN JAIL WAS SO PREJUDICIAL IT COULD NOT BE CURED BY A CURSORY LIMITING INSTRUCTION.

---

[1] We employ initials for parties herein due to allegations of domestic violence. R. 1:38-3(c)(12).

[2] N.J.S.A. 2C:43-7.2.

POINT IV: [W.B.] WAS IMPROPERLY DENIED
JAIL CREDIT ON THE SECOND INDICTMENT.

Having reviewed all defendant's arguments and the record presented, we determined points two and three lack sufficient merit to warrant discussion in a written opinion under Rule 2:11-3(e)(2), and point four is conceded. Therefore, we only concern ourselves with the jury charge.

The facts and procedural history are not in dispute. Defendant was charged under indictment 16-10-2932 with one count of second-degree burglary, N.J.S.A. 2C:18-2(a)(1); one count of second-degree unlawful possession of a weapon, 2C:39-5(b); and one count of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1). He was also charged under indictment 17-02-479 with one count of first-degree unlawful possession by an individual with a prior NERA conviction, N.J.S.A. 2C:39-5(j).

Defendant's charges arose from being accused of entering the premises of his ex-girlfriend, K.E., without her permission, in the early morning hours of September 1, 2016, while he was armed with a deadly weapon. He was also accused of possessing a handgun without a permit and of possessing a handgun for an unlawful purpose.

During a jury trial on those charges, K.E. testified that she saw defendant headed toward her apartment, so she called the police. The State played a

3                                                          A-5868-17T4

recording of the 9-1-1 call wherein K.E. accused defendant of harassing her. Indeed, K.E. told the operator that her "ex-boyfriend keeps coming back to my house, harassing me . . . ." Additionally, at trial, K.E. testified that she and defendant had an argument earlier that day, and that she "didn't want to be bothered." Subsequently, the police arrived at K.E.'s apartment, and she asked police to escort defendant off the premises. She then gave the police her apartment key and Officer Rennie Wilson opened the door. Wilson testified that as he opened it, he pinned defendant behind the apartment door. This caused defendant to drop the handgun to the floor. Another police officer immediately recovered the weapon.

During defendant's trial, K.E. gave differing testimony, stating that defendant used his keys to her apartment "to come from time to time," and denied that defendant did not have permission to enter her apartment. She also testified she had been dating someone else, R.S., and she had seen R.S. with a handgun in her house. Notably, K.E. stated that she had seen the handgun in a drawer in her bedroom on the day of the incident, and that it belonged to R.S.

The prosecutor called Sergeant John Campo to neutralize K.E.'s recanted testimony. Campo testified that he was present during an interview with K.E. less than a week prior to the trial, wherein she stated that defendant did not have

permission to be at her house, and that she did not see a weapon at her house on September 1, 2016.

Prior to Campo's testimony, the trial judge ruled, during colloquy, that Campo's testimony would not be used to impeach or for hearsay purposes, and that it would only be permitted for neutralization purposes. The judge did not, however, convey that limiting instruction to the jury at any point, as required by N.J.R.E. 607 and interpretive case law. Prior to summation, the defense requested a judgment of acquittal on the first indictment, 16-10-2932. The court addressed each count and denied defendant's request.

Next, during summation, defense counsel referenced Campo's testimony and told the jury: "you're going to have to make a decision about who's telling the truth." During the prosecutor's closing remarks regarding K.E.'s assertions about the ownership and location of the handgun, he stated that the jury should take Campo's testimony for its truth: "[Sergeant Campo] came in and testified that when he spoke with her prior that that wasn't what she said, right? So, she says one thing here, she says one thing there." "[Campo] came in and told you, well, when she was asked previously if she saw a gun in the house, anybody kept a gun in the house[,] she said no."

A-5868-17T4

The prosecutor also told the jury that the police officers who testified had no reason to lie. During his closing statement, the prosecutor further made additional arguably inappropriate comments. For instance, he called the defense theory a "conspiracy" and a "scheme." Defense counsel objected to these comments during the summation, and the trial judge instructed the jury that their recollection "will prevail as to what the evidence shows."

In the end, the jury acquitted defendant of the burglary and possession of a weapon for unlawful purpose charges, but he was found guilty of second-degree unlawful possession of a weapon. Immediately following the jury verdict, defendant pleaded guilty to the charge of first-degree unlawful possession of a weapon by an individual with a prior NERA offense, under the separate indictment. For the second-degree weapon possession charge, he was sentenced on May 25, 2018, to eight years' imprisonment with four years' parole ineligibility. For the first-degree unlawful possession charge, he was sentenced to ten years' imprisonment with five years' parole ineligibility; the sentences for the two charges were ordered to run concurrently.

This appeal followed.

When a defendant fails to object to an error regarding a jury charge, we review for plain error. State v. Funderburg, 225 N.J. 66, 79 (2016). "Under that

standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" Ibid. (quoting R. 2:10-2). "The mere possibility of an unjust result is not enough." Ibid. (citing State v. Jordan, 147 N.J. 409, 422 (1997)). "To warrant reversal . . . an error at trial must be sufficient to raise 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" Ibid. (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).

As "indication of the paramount importance of accurate jury instructions," our Supreme Court has held that "erroneous instructions on material issues are presumed to be reversible error." State v. Reddish, 181 N.J. 553, 613 (2004) (quoting State v. Marshall, 173 N.J. 343, 359 (2002)).

Neutralization testimony is addressed by N.J.R.E. 607, which states that:

> (a) For the purpose of attacking or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence relevant to the issue of credibility, subject to the exceptions in (a)(1) and (2).
>
> (1) This provision is subject to Rules 405 and 608.
>
> (2) The party calling a witness may not neutralize the witness' testimony by a prior contradictory statement unless the statement is in a form admissible under Rule 803(a)(1) or the court finds that the party calling the witness was surprised.

7

[N.J.R.E. 607 (emphasis added).]

As we noted twenty years ago in State v. Carabello, our Supreme Court has specifically addressed the issue of neutralization testimony, providing a roadmap for trial court procedure:

> The appropriate procedure [on neutralization testimony] is described in State v. Gallicchio[.] When a proponent has no indication that a witness will repudiate his prior statement and is truly surprised by the contradictory testimony given, the trial court must take prompt action to insure fairness. At side bar, the court must decide whether the party has a prior statement of the witness which is truly contradictory to his present testimony, whether the party is without prior knowledge that the witness would testify contrary to such prior statement, and whether the present testimony is prejudicial or detrimental to the proponent's case. Its findings, if favorable to the proponent, should not be revealed to the jury. Upon finding that the requisite elements are present, the trial court should permit the prior statement to be used, instructing the jury contemporaneously as to its effect. The jury should be instructed that it may consider the prior statement in deciding whether to believe the testimony which the prior statement contradicts. The trial court should strongly emphasize that in no event is the jury to consider the prior statement as proving the truth of the matter therein stated. At the conclusion of the case, the jury should again be instructed on this point.
>
> [330 N.J. Super. 545, 559 (2000) (first citing State v. Gallicchio, 44 N.J. 540 (1965); and then citing State v. Johnson, 216 N.J. Super. 588, 608-09 (App. Div. 1987)) (internal citations omitted).]

In Gallicchio, the Court was satisfied the jury was instructed three times regarding the neutralization process, and thus found no prejudicial error. 44 N.J. at 547. In Johnson, this court found that the trial judge did not provide limiting instruction, nor did the trial court include the issue in charging the jury. 216 N.J. Super. at 609. Further, as in the present case, the defendant in Johnson failed to object. Ibid. However, the statements in Johnson did not inculpate the defendant, so the court found the error to be harmless. Id.

Here, this case is more like Caraballo, wherein a witness appeared "for the sole purpose of bringing before the jury an out-of-court statement with no proof of its underlying reliability. No limiting instruction was given to the jury. We are convinced that the error so committed was capable of producing an unjust result." 330 N.J. Super. at 559-60.

"Appropriate and proper jury charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting Reddish, 181 N.J. at 613). "The trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" Id. at 159 (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). "Thus, the court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case,

irrespective of the particular language suggested by either party.'" Ibid. (quoting Reddish, 181 N.J. at 613). "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." Ibid. (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).

Here, the State concedes the judge failed to instruct the jury on the limited purpose of Sergeant Campo's testimony. But otherwise, it argues that the trial court's absence of a limiting instruction was harmless because the prosecutor cabined discussion of this evidence during closing statements. The prosecutor's summation, the State asserts, appropriately served to limit the purpose of the officer's testimony. The State's argument in this respect directly contradicts the ruling principle of our adversarial system. The lawyers are advocates on behalf of the parties. The trial judge is the neutral arbiter of the law. Only the trial judge has the authority to instruct the jurors on the legal principles that will govern their deliberation.

Here, the prosecutor addressed the jury in summation as follows:

> Now, with respect to some of her inconsistencies, I submit to you she was inconsistent here in court regarding two specific things (1) that ultimate question, right, for the burglary charge, did the defendant have permission to be there? Now, she said something along the lines of well, I can't really say no. We were on

10

> again, off again, et cetera. You heard her, right? And your memory is what controls.
>
> And Sergeant Campo[] came in and testified that when he spoke with her prior that that wasn't what she said, right? So, she says one thing here, she says one thing there.

The State relies on Johnson, 216 N.J. Super. at 588, to argue that the jury verdict in this case "would have been the same absent the error." Id. at 608. Although, in fact, to fully quote the sentence in Johnson: "Even if the error is of constitutional dimension, it will be held harmless if it is clear beyond a reasonable doubt that the jury verdict would have been the same absent the error." Johnson, 216 N.J. Super. at 607-08 (emphasis added) (citations omitted).

The State's argument misstates the law. Our courts' interpretation of N.J.R.E. 607 is clear: the trial court must instruct the jury to limit its application of a neutralization witness. The State's instruction to the jury—on the State's own witness's testimony—would not suffice to avoid unfair prejudice to the defendant.

Of course, whether K.E. told the truth during trial, her testimony and credibility—as the person who called the police at the outset in this incident—is material to the indictment. Her statements regarding whether the defendant had permission to enter her home, and whether she had seen a handgun in her

11

home prior to the incident, were material to the charges of which defendant was acquitted. However, K.E.'s testimony was not material to the charge of which defendant was convicted: possession of a handgun without a permit. She was not present at her apartment when the police officers entered, and she was unable to testify about the officers' interaction with defendant and his possession of the gun.

K.E.'s testimony specifically addressed the two charges of which defendant was found not guilty. For instance, defendant was found guilty of possessing a handgun without a permit, but K.E.'s testimony does not contravene that point; her testimony addressed the charges of burglary and ownership of the handgun—whether it was R.S.'s handgun or defendant's.

Accordingly, referring back to defendant's second point, the trial judge's limiting instruction to the jury regarding the prosecutor's closing argument could potentially have been effective, as the jury found reasonable doubt that defendant was not allowed to be in his ex-girlfriend's home and that defendant had an unlawful purpose. At the same time, we cannot assume the jury would have found otherwise if the trial judge had provided a limiting instruction regarding Campo's neutralization testimony.

Defendant contends that the prosecutor encouraged the jury to accept Campo's testimony for the truth of its assertion, not as neutralization testimony. We agree; the prosecutor's summation raised doubt that a jury would believe Campo's statements were being introduced for any purpose other than the truth—specifically, that defendant did not have permission to enter K.E.'s home and she did not see a weapon in her house on the date of the incident.

Without a proper limiting instruction from the trial court, it cannot be assumed beyond a reasonable doubt that the jury's verdict would be the same.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5868-17T4