STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. SAMUEL LEVINE, PLAINTIFF IN ERROR.

Submitted October 16, 1931—Decided November 9, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the state, *Joseph L. Smith,* prosecutor, *Simon L. Fisch* and *Harold H. Fisher.*

For the plaintiff in error, *Abraham J. Isserman* and *Morris L. Ernst (Alexander Lindey,* of counsel).

The opinion of the court was delivered by

CASE, J.   This is an appeal on strict writ of error from a judgment of conviction of Samuel Levine in Essex Quarter

Sessions on an indictment for advocating the subversion of the government of the United States.

Five persons, offered as witnesses on behalf of the defendant, were denied their several requests to be affirmed. Consequently, they did not testify. The defendant, produced in his own behalf, was permitted to tell his story to the jury, but was denied his request to be affirmed as a witness. The rulings effecting these denials are before us. The reason for the rulings was that the persons involved refused to take an oath, stated that they believed neither in God, nor in any god, nor in the Bible, that they had no religious belief whatsoever and that because of this mental attitude they were conscientiously scrupulous of taking an oath.

Pertinent constitutional and statutory provisions are the fourteenth amendment to the federal constitution, particularly these words: "* * * Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws;" article 1, section 4, of the state constitution, especially this portion: "No person shall be denied the enjoyment of any civil right merely on account of his religious principles;" and sections 22 to 29 inclusive, of "An act prescribing certain oaths" (3 *Comp. Stat., p.* 3772), section 26 of which reads as follows:

"Every person, who shall be permitted or required to take an oath in any case, where by law an oath is allowed or required, and who shall allege that he or she is conscientiously scrupulous of taking an oath, shall, instead of the form of an oath, be permitted to make his or her solemn affirmation or declaration; and if such person shall choose to affirm, it shall be in words following, to wit:

"I,        , do solemnly, sincerely, and truly declare and affirm:

But if such person shall choose to declare, it shall be in the words following, to wit:

"I,        , do declare, in the presence of Almighty God, the witness of the truth of what I say:

"Either of which forms shall be as good and effectual in law, as an oath taken in the usual form, in which affirmation or declaration, the words 'so help me God,' at the close of the usual oath, shall be omitted."

It is contended that the proposed witnesses in alleging that they were conscientiously scrupulous of taking an oath thereby invoked the peremptory direction of the statute and were entitled, forthwith, to be affirmed. But in order to understand the real purport of the statute and the true significance of the phraseology, some historical study as to origin, use and acceptation is necessary. The religious aspect of the sacramental, corporal or solemn oath, commonly called simply "the oath," is self-apparent. The matter embraced within sections 22 to 29 inclusive, mentioned above, was first enacted in its present wording and arrangement, February 16th, 1799, under the title "An act for the relief of persons who are scrupulous of taking an oath in the usual form." *Pat. Rev.* 367. A fair interpretation of the wording of the title and the body of the act is that merely the form and not the substance of the oath, as it theretofore existed, was being diversified. The latter statute had its parentage in an act passed February 10th, 1727 (76 *Allinson's Laws of N. J.*), which limited the privilege of testifying under affirmation to the religious sect known as Quakers, as follows: "* * * the people commonly called Quakers * * * may take an affirmation in the words following, pursuant to the said statute, 'I, A. B., do solemnly, sincerely and truly declare and affirm.'" The 1727 statute followed closely upon, was in terms related to and in essential words identical with, the English statute of 1721, authorizing the members of the Society of Friends to affirm in the language last quoted. Parliament had, in 1696, permitted the Quakers to testify by pronouncing the form that now appears secondly in section 26 of our statute, *supra,* known as a declaration, but the Society of Friends were not pleased therewith as they objected to any ceremonial involving what they believed to be a profane and impious reference to the Deity. *"Oaths in*

*judicial proceedings and their effect upon the competency of witnesses."* 42 *Am. L. Reg. (N. S.)* 373, 421. Therefore, the later enactment.

Thus were introduced the several forms now in ordinary use, all being grounded in religious belief. The English statute was later extended to Moravians and Separatists and still later to all persons of any denomination who stated that they had conscientious scruples against swearing. Finally, by statutes passed in 1869 and 1871 (44 *The Justice of the Peace, England,* 567), and 1888, the English parliament authorized the making of affirmation by any person who objected to being sworn and who stated as the ground of such objection either that he had no religious belief or that the taking of an oath was contrary to his religious belief; the pertinency of these statutes to the present discussion being that obviously the earlier provision for those who had "conscientious scruples" against taking an oath was not considered to have application to a person without religious beliefs, that is to say, without beliefs grounded in a religion of some sort. Indeed, it has very generally been held in judicial opinions and considered in unofficial writings that the phraseology —"conscientiously scrupulous of taking an oath"—has relation to scruples that are based on religious belief and does not include the mental state that accompanies the having of no religious belief. The expression, at the time of its inception, carried the significance of "religiously scrupulous;" and this use, in this connection, still maintains. For illustration see Webster's New International Dictionary in its definition of "conscience clause" as "a clause in a general law exempting persons whose religious scruples forbid compliance therewith—as from taking judicial oaths, service, &c."

Under the common law no person could be a witness in a judicial proceeding unless he believed that there was a god and that that god would punish him if he swore falsely. *Omichund* v. *Barker,* 1 *Atk.* 21; 11 *English Ruling Cases (A. D.* 1744), 126. The common law, except in so far as it

has been been altered or repealed by statute, is the law to-day. Constitution, article 10, paragraph 1.

A consistent view was entertained by the early jurists in this state. In *Den* v. *Van Cleve* (1819), 2 *South.* (5 *N. J. L.*) 589 (at *p.* 652), Chief Justice Kirkpatrick said:

"These causes [viz., for depriving a person of the privilege of being a witness], so far as they are personal, or go to the capacity of the witness, are principally these three: the want of discretion, as in the case of infants; the want of intellectual powers, as in the case of idiots, lunatics and madmen; and the want of religious principle and belief, as in the case of those who do not believe in the being, perfections and providence of God, nor in a future state of rewards and punishments, where he that beareth false witness, and so taketh the name of his God in vain, shall not be held guiltless."

Likewise, in *Williamson* v. *Carroll* (1837), 16 *N. J. L.* 217, Chief Justice Hornblower remarked:

"But the legislature, with becoming respect and deference to the religious sentiments and opinions of a numerous and highly respectable portion of the community, has provided a substitute for the sacramental or corporal oath for such as are conscientiously scrupulous of submitting to that ceremony."

Twenty years later, in 1857, indirect light was thrown on the view of the Court of Errors and Appeals by the well known case of *Donnelly* v. *State,* 26 *N. J. L.* 601 (at *p.* 620). Donnelly was on trial for the murder of one Moses, and a statement made by Moses shortly before death, inadmissible on other grounds, was admitted as a dying declaration. The trial court was asked to charge the jury that "if they were satisfied that Moses had no belief in God and in a future state of rewards and punishments they must disregard his dying declarations." The judge charged that the law was thus correctly stated but, also, that the law presumed that the declarant *had* such belief until the contrary was proved. The appellate court, stating the rule to be that the declarant was in the relation of a witness and that whatever would

disqualify a witness would make such declarations incompetent testimony, added that persons insensible to the obligations of an oath, from defect of religious sentiment and belief, were incompetent to be sworn as witnesses. It may reasonably be inferred from the context that the expression "sworn as a witness" had reference to the several methods, including affirmation, by which a person, produced for the purpose of giving testimony, might become a witness.

So, Bouvier's Dictionary defines an affirmation as "a solemn religious asseveration in the nature of an oath." 1 *Greenl. Evid.* (16*th ed.*), § 364b, says:

"All witnesses are to be sworn according to the peculiar ceremonies of their own religion, or in such manner as they may deem binding on their own consciences. If the witness is not of the Christian religion, the court will inquire as to the form in which an oath is administered in his own country, or among those of his own faith, and will impose it in that form. And if, being a Christian, he has conscientious scruples against taking an oath in the usual form, he will be allowed to make a solemn religious asseveration, involving a like appeal to God for the truth of his testimony, in any mode which he shall declare to be binding on his conscience," and in section 370a, commenting on statutory changes, and drawing an antithesis between the having of scruples and the absence of belief:

"These changes have been of three sorts. (1) In some jurisdictions, it has been provided that no person shall be incompetent to testify because of his religious opinions. This, in effect, leaves the oath as a uniform formality, but practically abolishes the requirements of belief formerly existing. (2) In other jurisdictions, the oath is made optional and those who either have scruples against taking it or have not the proper belief or merely do not wish to take it [according to the varying statutes] are allowed to substitute an affirmation. (3) In still other jurisdictions, the oath is entirely abolished, and an affirmation is used as the uniform preliminary to testimony."

In many of the states statutes have been enacted providing that no person shall be incompetent as a witness because of his belief or disbelief in the tenets of any system of religious teaching. The marked legislative trend in this respect seems quite in harmony with modern thought and conditions, and counsel for the defendant below apparently relies upon this fact as an argument herein. But that appeal should be made to the legislature. To make it here is to confuse the legislative and the judicial functions. It is our part to find, announce and apply the law, not to make or to change it.

The state of the common law, the colonial statutes, the now existing legislation and its history, and the time-weathered expressions of our courts lead us to the conclusion that the words "conscientiously scrupulous" when enacted in the statute on affirmations were applicable only to those who had scruples conscientiously founded upon religious beliefs and whose religious beliefs embraced a belief in a deity and in the power of that deity to accomplish punishment. We further find that subsequent legislation has not worked a change with respect to witnesses not parties to the cause.

As contrasted with a party to the cause, a witness, without an interest, has no right in himself to testify. A witness is called and produced, with some exceptions that need not now be spoken of, by one or another of the parties, and such rights as exist with respect thereto lie in the parties. The inability of a party to procure testimony from an unbeliever is not the denial of the equal protection of the laws nor is it the denial of a civil right because of the party's religious principles. That inability rests equally on a party that is a believer as on one that is not. It happens that in the instant case the defendant is an unbeliever, but the disposition of his witnesses had no relation to his own religious status. The witnesses were not, in fact, conscientiously scrupulous within the meaning of the statute, and this is manifest from their voluntary assertions. The court rulings as to the five persons other than the defendant himself were correct.

The defendant is in a different situation. The precise ruling as to him was:

"The defendant himself who will not take an oath and who cannot be affirmed under the statute is permitted to testify without either. So the witness will be allowed to testify though he refused to take any oath, and I will not permit him to affirm. He may testify without either."

It was held by this court in *Percey* v. *Powers*, 51 *N. J. L.* 432, that a party to a cause has a statutory right to testify in his own behalf and that that is a civil right, the enjoyment of which cannot, under the constitutional provisions mentioned *supra*, be denied to any person merely on account of his religious principles, and that the fact that a party does not believe that God will punish perjury does not render such party incompetent as a witness when offered in his own behalf. The holding recognized constitutional and statutory changes in the common law conception of essential religious belief so far as concerned the affirmation of a party to the cause. True, the decision reserved formal expression as to whether a person who denied the existence of a Supreme Being might be said to have religious principles in such fashion as to bring him within the protecton of our state constitution; but in declaring an end to the requirement that a party, to become competent as a witness, must believe in a god who could and would inflict punishment for false swearing, the decision wiped out the *sine qua non* of the common law on that subject, for the view was that in such case, using Lord Chief Justice Willes' words in *Omichund* v. *Barker, supra,* "an oath cannot possibly be any tie or obligation." See, also, *Den* v. *Van Cleve, supra*. Having gone this far, the logic of the argument leads toward an affirmative answer to the reserved question. We consider that the constitutional provision is a direction that the belief or the disbelief of any person on religious topics shall not debar him from rights which the law affords to others.

Section 57 of the Criminal Procedure act (*Pamph. L.* 1898, *ch.* 237, *p.* 866), provides that "upon the trial of any indictment the defendant shall be admitted to testify if he shall offer himself as a witness." This, by the Percey decision,

constitutes a civil right. The defendant herein did offer himself as a witness. Thereupon he had the right to testify. To deny him that right was to deny him the equal protection of the law; and to deny it upon the grounds stated was, we think, a denial on account of his religious principles.

The trial court was right in ruling that the defendant was entitled to testify, but we are not familiar with a procedure that permits a witness to testify on a formal issue in court without a ceremonial induction into the giving of his testimony. In *Anderson* v. *Barnes,* 1 *N. J. L.* 203, a reversal was granted because the court had permitted one of the jurors to give evidence to his companions without being sworn as a witness. In *Williamson* v. *Carroll, supra,* it was held that "*prima facie* every witness is to be sworn and all evidence is to be given under oath." In *Pullen* v. *Pullen,* 4 *Atl. Rep.* 82 (not officially reported), Vice-Chancellor Bird, on a motion to expunge the testimony of a witness because she had not kissed the Bible, said: "The solemn invocation, affirmation or declaration is the substance." Willful falsehood following the use of one of these forms would have been perjury. But, however untrue the informal statements made by the defendant may have been, no perjury was committed, no charge thereof can be made, and no punishment inflicted. See *In re Breidt,* 84 *N. J. Eq.* 222.

To permit the defendant to make his statement before the jury, even under examination and cross-examination, was not to permit him to testify in the full sense of that word. Whatever disbelief the defendant had as to punishment by the deity, he knew, and the jury knew, that there is punishment under the processes of the law for those who commit perjury. It was the right of society, if the defendant was to make his presentation to the jury, to have him make it under such conditions that willful falsehood therein would be perjury. That was likewise the defendant's right, for a statement, irresponsibly made, might, because so made, lose credence with the jury. Inasmuch as the defendant had a right to testify, he had a right to exercise that function under an initial solemnity binding him to tell the truth.

Our legislature has not specified the form by which a party under such circumstances should be inducted into the witness chair, but many foreign legislatures, in comparable circumstances, have applied the affirmation to this use, and as that form seems appropriate and sufficient, we conclude that the legislative intent was that it should be used. The defendant's request was that he be permitted to affirm. The denial was error, not because the defendant had brought himself within the class of those who, under the terminology of our statute on oaths, are "conscientiously scrupulous," but because he was otherwise, as shown above, entitled to testify.

Other assignments, unsupported by exception at the trial, have not been considered.

For the reason given above the judgment below will be reversed.