THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JERRY GALLICCHIO, Jr., DEFENDANT-APPELLANT.

Argued March 1, 1965—Decided May 24, 1965.

542 

*Mr. Waldron Kraemer* argued the cause for appellant.

*Mr. John G. Graham,* Assistant Prosecutor of Essex County, argued the cause for respondent; *Mr. Brendan T. Byrne,* Prosecutor of Essex County, attorney.

The opinion of the court was delivered by
SCHETTINO, J. Defendant, Jerry Gallicchio, Jr., indicted and tried for murder, was found guilty of manslaughter. His direct appeal to this Court followed. *R. R.* 1:2–1(c).

At approximately 10:00–10:30 P. M., October 7, 1962, Jeffrey Alas, Richard Nayduch, and three others returned to Newark after an automobile trip to New York. Nayduch, desirous of repaying a $15 debt to defendant, had his companions stop at Gallicchio's home. While Nayduch went inside, the others waited in the car.

Gallicchio was home alone. Nayduch entered Gallicchio's apartment, which was on the first floor, and remained inside for about 20 minutes. As he was about to leave, Alas who had decided to go inside, rang the bell. At this point Gallicchio told Nayduch to tell Alas and the others to stay away "because I didn't want no trouble with my wife. When I wasn't home people were coming there, looking for me, and it was annoying to her." Nayduch left the apartment and went down the hall to the front door where he met Alas and gave Alas defendant's message. Alas disregarded defendant's order and entered Gallicchio's apartment. Nayduch followed him in. Gallicchio and Alas had an argument and a fight followed.

Gallicchio testified that Alas came at him with a knife, he pulled Alas' wrist and arm and both of them fell to the floor. After struggling for a couple of minutes he was able to free himself. Thereupon Alas got up, with knife in hand and blood on his body and said: "I will get you for this" and walked out. After Alas departed, Nayduch helped Gallicchio clean the blood-spattered apartment.

The other three occupants of the car saw Alas make his way out of the apartment house and stumble into the car. They took him to Martland Medical Center.

On October 11, 1962 Gallicchio was arrested and charged with assault and battery. While at police headquarters, he was interrogated as to the reason for the knifing. He stated "What would you do if somebody was fooling around with your wife?"

Alas died on October 12, 1962 as a result of hemorrhaging due to a wound from a knife which entered the upper right side of the abdomen, directed downward and backward from

right to left to a depth of five inches, perforating the left lobe of the liver. There were three other knife wounds. Both his right and left arms were cut and he sustained a wound one and one-half inches deep in the back of the left chest.

The charge against Gallicchio was thereafter changed to murder.

## I.

■■ Defendant contends that the trial court improperly permitted the use of neutralization. By neutralization is meant the erasure or cancellation of unexpected harmful testimony by a showing—either by cross-examination or by other witnesses — that the witness has made a statement in conflict with his present testimony. Where a party calls a witness who, to the surprise of the proponent, testifies in conflict with a previous statement, and to the harm of the proponent's case, the proponent is permitted to utilize the previous statement "to neutralize" the witness's harmful testimony. *State v. Cooper,* 10 *N. J.* 532 (1952); *State v. Caccavale,* 58 *N. J. Super.* 560 (*App. Div.* 1959); *State v. Baechlor,* 52 *N. J. Super.* 378 (*App. Div.* 1958). This has been the settled rule since *State v. D'Adame,* 84 *N. J. L.* 386, 395 (*E. & A.* 1913), where the court stated:

"The state, having been thus surprised into offering evidence, the effect of which was exactly contrary to what it was endeavoring to prove, viz., the guilt of the defendant, had the right, if it could do so, to neutralize the effect of such evidence by proving [prior] self-contradictory statements of the witness * * *."

Herein when the State called Nayduch on direct examination he testified that when the argument between Gallicchio and Alas started, Alas punched Gallicchio in the face. Nayduch joined in, on the side of Alas. Gallicchio thereupon pushed Alas to the floor and was defending himself against Nayduch. At that point Nayduch saw Alas going toward defendant with a knife and yelled "Jeff [Alas] don't. I'll help you out." He saw Gallicchio turn around and then Gallicchio pushed him to the floor rendering him unconscious. When

Nayduch regained consciousness, he did not see Alas in the apartment.

The State claimed surprise and asserted that it had a prior inconsistent statement by Nayduch. The trial court, believing the State's claim of surprise, thereupon permitted the prosecutor to use the witness's prior statement in order to contradict, and thereby neutralize, the trial testimony that Alas held the knife. In his prior statement Nayduch said: "Jerry [Gallicchio] grabbed him again and then I saw Jerry with the knife in his hand and I saw Jerry's hand with a knife in it going toward Jeff's [Alas'] body." Neutralization was again permitted when Nayduch upon further examination by the State testified in reference to the knife. In substance the prior contradictory statement stated that Alas was not in possession of a knife but that defendant was.

There is no doubt that the State was in possession of a prior conflicting statement of the witness, that it had no prior indication of Nayduch's present disposition and that it was therefore surprised by this testimony. It is also clear that Nayduch's testimony that Alas held the knife and was advancing toward defendant was harmful to the State's case *i. e.,* it was injurious to the proponent's case.

The authorities warn that the proponent cannot claim harm if the present testimony is only contrary to that which the proponent expected or was attempting to elicit or that the witness failed to render the expected assistance in the prosecution of a defendant. The witness must give testimony asserting the existence or nonexistence of a material fact contrary to the proponent's case. *State v. Perillo,* 18 *N. J. Super.* 549 (*App. Div.* 1952); *Ciardella v. Parker,* 10 *N. J. Super.* 537 (*App. Div.* 1950). See *McCormick, Evidence, c. 5, sec.* 38, *p.* 73 (1954).[1] The State's theory was that Gallicchio was the armed aggressor. Based upon his prior

---

[1] It is to be recognized, however, that nonassertive testimony may in certain circumstances be harmful. See *State v. Baechlor, supra; State v. Kysilka,* 85 *N. J. L.* 712 (*E. & A.* 1914); *State v. D'Adame, supra; cf. State v. Perillo, supra.*

statement the State expected Nayduch so to testify. By placing the knife in Alas' hand with Gallicchio merely trying to defend himself, Nayduch asserted facts in direct conflict therewith, thus adversely affecting the State's case.

We therefore hold that the trial court's ruling was correct.

## II.

Defendant also contends that the trial court charged insufficiently on the use of the prior contradictory statements in that the jury should have been instructed as to the purpose of the neutralizing procedure at the time it was utilized.

In its charge the trial court instructed the jury that the contradictory statements were used not to prove the facts which they assert but merely to wipe the slate clean. On three different occasions during the course of the neutralization of Nayduch's testimony, the same instruction, in substance, was made in front of the jury in answer to defendant's counsel's suggestions. We feel that the jury was well informed as to the nature and effect of the neutralizing process and that no prejudicial error resulted.

The authorities are not clear as to the exact steps to be taken when a proponent does not know prior to calling the witness that his trial testimony will contradict his prior statement. *State v. Guido*, 40 *N. J.* 191, 200 (1963), sets forth the procedure to be used when a proponent, prior to trial, has been advised that a witness will not adhere to a prior statement, but feels the disavowal should be tested under oath. He should so inform the trial court at side bar. The witness should be examined in the absence of the jury and then so much of his testimony as is not neutralized may be repeated in the jury's presence. But when a proponent has no such prior indication and is surprised by the witness's contradictory testimony, the trial court should, at side bar, determine the propriety of its invocation. Preliminarily the trial court must decide that the party has a prior statement of the witness which is contradictory to his present testimony, that the

party is without prior knowledge that the witness would testify contrary to such prior statement (*i. e.,* the party is surprised thereby), and that the present testimony is harmful in that it is prejudicial or detrimental to the proponent's case. Its findings, if favorable to the proponent, should not be revealed to the jury.

Upon finding that the requisite elements are present, the trial court shall permit the prior statement to be used, instructing the jury contemporaneously as to its effect. The jury should be instructed that they may consider the prior statement in deciding whether to believe the testimony which the prior statement contradicts. The trial court should strongly emphasize that in no event is the jury to use the prior statement as proving the truth of the matter therein allegedly stated.[2] Of course, at the conclusion of the case the jury should again be instructed on this point.

### III.

On direct examination by the State, a police detective testified concerning Gallicchio's oral statement to the police as to why he had stabbed Alas. Cross-examination of this witness revealed that a written report had been submitted by him to the homicide squad in connection therewith but that the report was not in court at this trial. When it appears that a State's witness has made prior notes or statements relating to the subject matter of direct testimony which he has given, the defense is entitled to inspect and use on cross-examination the prior notes or statements if they are or can be made available. *State v. Hunt,* 25 *N. J.* 514, 531 (1958).

---

[2] We note the suggestion of many eminent authorities to the effect that a prior statement should have some substantive value. 3 *Wigmore, Evidence* (3d ed. 1940), § 1018, *p.* 687, *McCormick, Evidence* (1954), *c.* 5, § 39, *p.* 73, McCormick "The Turncoat Witness," 25 *Tex. L. Rev.* 573 (1947). We feel, however, that the orthodox rule is of such long standing *(State v. D'Adame, supra)* and of such merit (see *State v. Saporen,* 205 *Minn.* 358, 285 *N. W.* 898 *(Sup. Ct.* 1939)) as to require this Court to reaffirm its application in our State.

██ Defense counsel, however, pursued this line of inquiry no further and never requested its production. The mere indication of the existence of notes or statements does not entitle a defendant to raise the failure of their production as plain error in an appellate court where no demand therefor had been made at trial. Moreover, it may well be that counsel feared that the report, if produced at his request, might be hurtful to his client.

## IV.

██ Defendant raises several points as error in the court's charge on self-defense in the main charge. In *State v. Hipplewith*, 33 *N. J.* 300, 317 (1960) we stated that:

"In passing upon the propriety of a trial court's instruction, this court will examine the entire charge to see whether the jury was misinformed as to the controlling law. It is ordinarily impossible for the trial court to state all of the applicable law in one sentence. The test, therefore, is whether the charge in its entirety was ambiguous or misleading."

Applying this test to the court's instructions in the present case, we find no error.

██ During the course of its deliberations the jury requested a redefinition of first degree murder, second degree murder and manslaughter. On these subjects the trial court reinstructed the jury in essentially the same terms as in the original charge. Defendant claims that the court should have recharged the jury on self defense as well. Had the trial court been in error as to its interpretation of the plain words of the jury's request, the jury would certainly have made a further request. See *State v. DiDolce*, 109 *N. J. L.* 233 (*E. & A.* 1932). As some indication that the jury was only interested in what the trial court charged is that the verdict was rendered within 15 minutes thereafter. We find no merit in defendant's claim.

## V.

Defendant complains of various other errors. No purpose would be served by a discussion thereof as we have examined all of them and find no error.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.